[Civ. No. 12054. Second Appellate District, Division Two.—February 7, 1939.]

B. J. BRADNER, as Receiver, etc., Respondent, v. LILLIE MAY WOODS, as Executrix, etc., Appellant.

Henry G. Bodkin, G. S. Silliman and Charles S. Gass for Appellant.

Bradner & Weil and Jerold E. Weil for Respondent.

CRAIL, P. J.—This is an appeal by defendant, as executrix, from a judgment for the sum of $5,640.27 on a rejected claim against the estate.

For some time prior to the death of Charles Lewis Woods, the said Woods and a Mr. Rumbold were partners engaged in the business of buying and selling gasoline, stove oil and motor fuel. At the time of the death of Mr. Woods such partnership was indebted to the plaintiff in the sum of $25,173.31.

For a period of ten days thereafter Mr. Rumbold conducted the business and was personally and solely liable

therefor. He bought merchandise from the plaintiff in the amount of $9,458.94, which merchandise was resold and the proceeds therefrom paid over to the plaintiff, amounting to $8,211.14, and there was also paid by Mr. Rumbold from other personal cash of his own the sum of $1719.13. Both of the accounts were carried by the plaintiff under the name of Charles L. Woods and Company in one memorandum. At the time of payment, Mr. Rumbold did not direct the application to be made of any of the moneys paid, and the plaintiff did not apply any of said payments to any particular portion of the amounts due him, and no application of the payments had been made by any of the persons interested until they were made by the court. Rumbold became insolvent.

The plaintiff filed a claim against the estate of decedent for the sum of $5,640.27, alleging that that sum was due from the estate and attached to the claim a memorandum of both accounts as though they were one. The claim was rejected, and thereafter suit was brought thereon, the complaint alleging the indebtedness due at the time of Mr. Woods' death, and also the subsequent purchases made by Rumbold, alleging that said purchases had been paid for, and alleging also that $19,533.04 had been received to apply on the indebtedness owing at the time of Mr. Woods' death, and that the unpaid balance was $5,640.27. The defendant did not at any time ask for any bill of particulars or any further detailed information as to the charges or credit shown on the statement attached to the claim, nor with respect to the matters set forth in the claim.

It is the defendant's contention that the estate was not bound by the account of the surviving partner in making purchases after the death of Mr. Woods, and consequently the estate is not responsible for any portion of the merchandise purchased after Mr. Woods' death, which debits are a part of the memorandum attached to the claim; that the surviving partner was liable for purchases both before and after death; that he made payments both out of partnership and individual funds upon the general account; and that therefore it necessarily follows that no part of the amount of the credits appearing on the accounts subsequent to the death of Mr. Woods should be applied to the purchases made after his death, and that therefore the payments admitted by the verified claim to have been made after the

death of Mr. Woods exceeded the $25,173.31, the amount owing at the date of his death.

The ledger account kept by the receiver, a copy of which was attached to the complaint, was not an account alone of Woods and Company, nor alone of Mr. Rumbold doing business himself as Woods and Company. It was merely a record of transactions arising out of merchandise sold first to Woods and Company and later to Rumbold alone.

■ We have in this case a memorandum which was in fact a record of two accounts, one upon which Rumbold alone was liable. No application of the payments having been directed or made by either debtor or creditor, there was no error in the court's action in applying the payments which came from partnership assets to the partnership debt and the Rumbold payments, which did not come from the partnership assets, first to the indebtedness for which Rumbold was personally and solely liable.

■ It is the contention of the defendant that the court was required under section 1479 of the Civil Code to apply the payments on the obligations earliest in date of maturity. Said section reads, in effect, that "if neither party makes an application of payments, the performance must be applied to the extinguishment of obligations in the following order: . . . 3. Of obligations earliest in date of maturity". If it is kept in mind that the memorandum attached to the claim contained two accounts, this is exactly what the trial court did. The court applied the funds which were received from Mr. Rumbold personally to the account for which Mr. Rumbold was solely liable, applying the payments to the obligation earliest in date of maturity; and the court followed the same rule with regard to the account of Woods and Company.

In the case of *Murdock* v. *Clarke*, 88 Cal. 384 [26 Pac. 601], the court discussed at length the rules governing the application of payments, and pointed out that section 1479 of the Civil Code was insufficient for all occasions, and actually decided the case in accordance with equitable principles. Among other things the court said on page 390, " . . . when neither party to the transaction makes any application of the payment, and there are different debts due from the debtor to the creditor, the law will make the application in such a manner, in view of all the circumstances of the case, as is most in accordance with justice and equity, and will best protect and maintain the rights of both parties.

(Citing cases.)'' And again the court said, "In this state an attempt has been made for the guidance of courts in this matter, but the rules there prescribed are insufficient for all occasions, and do not embrace even the conditions of the present case.'' The situation which we have confronting us is one where there are two accounts—a joint indebtedness of two debtors on the one hand, and on the other an indebtedness of only one debtor.

In the case of *Ohio Electric Car Co.* v. *Le Sage,* 198 Cal. 705, the court said at page 712 [247 Pac. 190], " . . . but where the obligations are not the same, or where one obligation is secured better than another, the application may rightly be made on the obligation the security for which is the most precarious. (*California Nat. Bank* v. *Ginty,* 108 Cal. 148, 153 [41 Pac. 38]; *Murdock* v. *Clarke, supra.*) In the early case of *Field* v. *Holland,* 10 U. S. (6 Cranch), 8, 28 [3 L. Ed. 136]; (see, also, Rose's U. S. Notes), Chief Justice Marshall, in applying the rule where the power of application devolves upon the court, stated: 'It being equitable, that the whole debt should be paid, it cannot be inequitable, to extinguish first those debts for which the security is the most precarious.' ''

The evidence shows that of the payments made after Mr. Woods' death a total of $9,930.27 was from money and property of Mr. Rumbold personally. Such payments should therefore be applied first to the payment of the $9,458.94 individual indebtedness of Mr. Rumbold which was the more precarious.

■ Finally, the defendant contends that if said applications of the payments are made, then there is a fatal variance between the claim presented and the judgment rendered such as to render erroneous the judgment awarded the plaintiff. To maintain this contention the defendant argues that because attached to the claim there was a statement showing both charges and credits subsequent to Mr. Woods' death, that all the charges subsequent to Mr. Woods' death can be and must be eliminated, but that all the credit shown subsequent to Mr. Woods' death must be allowed to stand as credits to the account owing by the partnership. We see no merit in this contention. The code nowhere prescribes the precise form of a claim against the estate of a decedent. ■ The creditor's claim against an estate is in no sense of the word

a pleading, and nothing requires that it should set forth the facts upon which it is based with the precision and detail of a complaint. The usual claim shows merely the nature of the claim and the amount due thereon, but, of course, it should afford the representative sufficient information to act upon it advisedly. (11A Cal. Jur. 739 et seq.) Such a claim was filed. The complaint set forth the facts correctly. It was not necessary to the sufficiency of the claim in this case that the statement attached thereto should have been attached at all. The plaintiff was not guilty of any irrevocable admissions of payment by filing the copy of the accounts attached to the claim. In the case of *White* v. *Deering,* 38 Cal. App. 516 [179 Pac. 401], the court said, ''In this connection, it must be remembered that a claim against an estate is not required to state the facts with all the precision and minuteness required in a complaint, and its sufficiency is not to be tested by the rules of pleading. (*Pollitz* v. *Wickersham,* 150 Cal. 238 [88 Pac. 911].) It would follow that even greater liberality should be shown in allowing amendments than in the ordinary class of cases, provided, of course, that the cause of action be not entirely changed and there be no prejudice to the substantial rights of those opposed in interest to the claimant.'' In the instant case the representative of the estate was afforded sufficient information regarding the claim to act on it advisedly.

Judgment affirmed.

Wood, J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal. was denied by the Supreme Court on April 6, 1939.